Plaintiff (hereinafter referred to as owner) leased to defendant (hereinafter referred to as tenant) a parcel of pasture land owned by her near the City of Alexandria in Rapides Parish, Louisiana. The written lease provided that the tenant should have the use of the dairy barn and hay barn as well as the water well located on the owner's property. The lease further provided that the tenant would "repair any damage done to said barns."
Alleging that the tenant at her request had vacated her property on November 1, 1947, the owner filed this suit claiming $448.80 to be due her by the tenant for damage done to her property in violation of the lease agreement. The petition asserted that the tenant, by virtue of his contract, was obligated to replace eight pieces of siding, two doors, four window panes, two shed posts and to pay the expenses of cleaning out and washing down the walls and *Page 829 
ceilings of the three rooms in the dairy barn; of leveling up the shed roof; of hauling dirt and filling in the holes around the watering tank and on each side of the shed.
The tenant, after the Court overruled an exception of vagueness, filed an answer admitting his occupancy of the premises under the lease, but set forth that his use of the property — including the slaughtering of animals complained of in the petition — had been an ordinary use of the property under the terms of the lease, and, assuming the position of plaintiff in reconvention, prayed that the owner be ordered to refund $200.00 paid by him for water used on the premises which the owner was obligated to furnish under the agreement.
The District Court gave judgment in favor of the owner for $400.00 as damages and rejected the reconventional demands of the tenant, whose appeal is now before us.
The tenant has not urged in this Court his reconventional demand for $200.00 allegedly paid on the water bill. The evidence shows that the tenant paid the amounts due for water used on the premises over and above the minimum charge. This was done without protest and there is no proof of any agreement for reimbursement. The claim was therefore correctly disallowed.
The contention of the tenant in this Court is that the repairs listed in plaintiff's petition were such that are the responsibility of the owner or lessor under Article 2693 of the Revised Civil Code, and not those listed under Article 2716, Revised Civil Code, quoted below:
"Repairs lessee required to make. — The repairs, which must be made at the expense of the tenant, are those which, during the lease, it becomes necessary to make:
"To the hearth, to the back of chimneys and chimney casing.
"To the plastering of the lower part of interior walls.
"To the pavement of rooms, when it is but partially broken, but not when it is in a state of decay.
"For replacing window glass, when broken accidentally, but not when broken either in whole or in their greatest part by a hail storm or by any other inevitable accident.
"To windows, shutters, partitions, shop windows, locks and hinges, and everything of that kind, according to the custom of the place."
In addition to — and possibly in conformity with — the applicable articles of the Civil Code, the tenant was obligated by provision of the lease to repair "any damage done to said barns," which were located on the leased premises.
There is considerable conflict as to whether the tenant was authorized to use the dairy barn, which included a washing room, cooling room and milking room, as a slaughter house. The lease specifically provided that the tenant should have the use of the buildings on the premises. Since there was no prohibition against the use of the dairy barn as a slaughter house, and particularly since the tenant had so used it prior to November 1, 1946 — and to the knowledge of the owner — we conclude that the use of the dairy barn as a slaughter house was not forbidden under the terms of the lease. However, the record discloses that the tenant did not leave the dairy barn in a usable condition, but instead left same with dirty and stained walls and with piles of refuse salt in the room used for the salting down of raw hides. The record further discloses that the tenant's use of the premises resulted in damage, including the dissipation of the supports under the posts holding up the hay barn shed, resulting in some of these posts being knocked down by the tenant's cattle. This, under the circumstances, constituted a "damage done to said barn," which the tenant was obligated to repair under the terms of the lease.
The list of estimated repairs submitted by plaintiff includes: "Painting, $170.00." The evidence discloses that this is for cleaning and washing the walls and ceilings and inside painting of the three rooms included in the dairy barn. Since the evidence discloses that the tenant's careless use of the dairy barn in the slaughtering *Page 830 
operations resulted in the staining of the lower walls and floors, and in view of the provisions of Article 2716 of the Revised Civil Code, holding the tenant responsible for such items as the plastering of the "lower part of interior walls," it is proper that the expense of cleaning and painting the lower portion of the walls should be borne by the tenant. The testimony shows that the condition of the upper walls and ceiling was due to normal deterioration, including the presence of dirt dauber nests. The remedying of conditions due to such natural causes is not a responsibility of the tenant. A division of this expense between the owner and tenant is proper.
Included in the estimate of repairs claimed by the owner was the replacement of ten pieces of siding (material $3.00, labor $3.00), allegedly removed by the tenant. The evidence discloses that this siding was removed when the owner removed a frigidaire, used in connection with dairying operations, from the building and hence its replacement is not a responsibility of this tenant.
No useful purpose would be served by further detailing the conflicting testimony regarding the condition of the premises on November 1, 1946 and on November 1, 1947 and the details concerning each of the one dozen specific repairs listed in the lumber and supply company's estimate of repairs introduced in evidence by the owner.
Having found that much of the repair work was made necessary by a combination of natural causes or fair "wear and tear," and the misuse of the premises by the tenant, we are faced with a difficult task in determining the amount due as damages by the tenant, and, after a careful study of the record, have concluded that an award to plaintiff of $250.00 would do substantial justice between the parties.
The judgment appealed from is reduced to $250.00 and as amended, it is affirmed. Costs of appeal to be borne by plaintiff; other costs by the defendant.